## THOMAS v. RAILROAD COMPANY.

1. The powers of a corporation organized under a legislative charter are only such as the statute confers; and the enumeration of them implies the exclusion of all others. :

2. A lease by a railroad company of all its road, rolling-stock, and franchises for which no authority is given in its charter is *ultra vires* and void.

3. The ordinary clause in the charter authorizing such a company to contract with other transportation companies for the mutual transfer of goods and passengers over each other's roads confers no authority to lease its road and franchises. .

4. The franchises and powers of such a company are in a large measure designed to be exercised for the public good, and this exercise of them is the consideration for granting them. A contract by which the company renders itself incapable of performing its duties to the public, or attempts to absolve itself from its obligation without the consent of the State, violates its charter and is forbidden by public policy. It is, therefore, void.

5. The fact that the legislature, after such a lease was made, passes a statute forbidding the directors of the company, its lessees or agents, from collecting more than a fixed amount of compensation for carrying passengers and freight, is not a ratification of the lease or an acknowledgment of its validity.

6. Where a lease of this kind for twenty years was made, and the lessors resumed possession at the end of five years, and the accounts for that period were adjusted and paid, a condition in the lease to pay the value of the unexpired term is void, the case not coming within the principle that executed contracts originally *ultra vires* shall stand good for the protection of rights acquired under a completed transaction.

ERROR to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action of covenant, by George W. Thomas, Alfred S. Porter, and Nathaniel F. Chew, against the West Jersey Railroad Company, and they, to maintain the issue on their part, offered to prove the following facts: —

On the eighth day of October, 1863, the Millville and Glassboro Railroad Company, a corporation incorporated by the legislature of New Jersey, March 9, 1859, entered into an agreement with them, whereby it was stipulated that the company should, and did thereby, lease its road, buildings, and rolling-stock to them for twenty years from the 1st of August, 1863, for the consideration of one-half of the gross sum collected from the operation of the road by the plaintiffs during that period; that the company might at any time terminate the contract and retake possession of the railroad, and that in such case, if the plaintiffs so desired, the company would appoint an arbitrator, who, with one appointed by them, should decide upon the value of the contract to them, and the loss and damage incurred by, and justly and equitably due to them, by reason of such termination thereof; that in the event of a difference of opinion between the arbitrators, they were to choose a third, and the decision of a majority was to be final, conclusive, and binding upon the parties.

On the 10th of April, 1867, the legislature of New Jersey passed an act entitled "A supplement to the act entitled 'An Act to incorporate the Millville and Glassboro Railroad Company.'" It was therein enacted that it should be unlawful for the directors, lessees, or agents of said railroad to charge more than the sums therein named for passengers and freight respectively. The plaintiffs claim that at the date of the passage of this act it was well known that they were acting under the said agreement of 8th October, 1863.

On the 12th of October, 1867, articles of agreement were entered into between the Millville and Glassboro Railroad Company and the West Jersey Railroad Company, the defendant, whereby it was agreed that the former should be merged into and consolidated with the latter.

In November, 1867, a written notice was served by the Mill-

ville and Glassboro Railroad Company upon the plaintiffs, putting an end to the contract and to all the rights thereby granted, and notifying them that the company would retake possession of the railroad on the first day of April, 1868.

On the 18th of March, 1868, the legislature of New Jersey passed an act whereby it was enacted that, upon the fulfilment of certain preliminaries, the Millville and Glassboro Railroad Company should be consolidated with the West Jersey Railroad Company, "subject to all the debts, liabilities, and obligations of both of said companies." The conditions required by that act were fulfilled, and the railroad was duly delivered by the plaintiffs to the West Jersey Railroad Company on the 1st of April, 1868.

On April 13, 1868, and again on May 22 of the same year, notices to arbitrate according to the terms of the agreement were served by the plaintiffs upon the Millville and Glassboro Railroad Company, and immediately thereafter upon the West Jersey Railroad Company. The latter company refused to comply with the terms of either notice; but subsequently, on the 21st of December, 1868, an agreement of submission was entered into between the plaintiffs and the latter company, whereby H. F. Kenney and Matthew Baird were appointed arbitrators, with power to choose a third, to settle the controversy between the parties. These arbitrators disagreeing, called in a third, who joined with said Baird in an award, by which the value of the unexpired term of the lease, and the loss sustained by reason of the termination thereof to and by the plaintiffs, was adjudged to be the sum of $159,437.07; and the West Jersey Railroad Company was ordered to pay that sum to the plaintiffs. This award was subsequently set aside in a suit in equity brought in New Jersey.

The plaintiffs further offered to prove their compliance in all respects with the terms of the lease, its value, and the loss and damage they had sustained by reason of its termination as aforesaid. The court excluded the offered testimony on the ground that the lease by the Millville and Glassboro Railroad Company to the plaintiffs was *ultra vires*, and directed the jury to return a verdict for the defendant. The plaintiffs duly excepted and sued out this writ.

They assign for error that the court below erred, —

1. In excluding from the consideration of the jury the offered evidence of the said agreement between the Millville and Glassboro Railroad Company and the plaintiffs; of the acts of assembly of New Jersey, one an act to incorporate the Millville and Glassboro Railroad Company, approved the 9th of March, 1859, and another an act entitled "A supplement to the act entitled 'An Act to incorporate the Millville and Glassboro Railroad Company,' passed the tenth day of April, 1867," and the acts referred to therein; of the fact that it was well known at the date of the last-named act that the plaintiffs were lessees acting under the said contract and agreement; and of all the other acts of the legislature of the State of New Jersey relating to the West Jersey Railroad Company, and to the Millville and Glassboro Railroad Company.

2. In directing the jury that their verdict must be for the defendant.

3. In entering judgment upon the verdict for the defendant.

*Mr. George W. Biddle* and *Mr. A. Sydney Biddle* for the plaintiffs in error.

I. The contract of 8th October, 1863, was *intra vires* of the Millville and Glassboro Railroad Company, because authorized by the act of incorporation.

*First,* It was expressly authorized by the act of incorporation, the thirteenth section of which declares " that it shall be lawful for the said company, at any time during the continuance of its charter, to make contracts and engagements with any other corporation, or with individuals, for the transporting or conveying any kinds of goods, produce, merchandise, freight, or passengers, and to enforce the fulfilment of such contracts."

A supplement to that act, approved April 10, 1867, sustains this position, for it enacts " that it shall be unlawful for the directors, *lessees,* or *agents* of said railroad to charge more than three and a half cents per mile for the carrying of passengers, and six cents per ton per mile for the carrying of freight or merchandise of any description, unless a single package, weighing less than one hundred pounds; nor shall more than one

half of the above rate be charged for carrying any fertilizing materials, either in their own cars or cars of other companies running over said railroad: *Provided,* that nothing contained in this act shall deprive the said railroad company, *or its lessees,* of the benefits of the provisions of an act entitled ' An Act relative to freights and fares on railways in the State,' approved March 4, 1858, and applicable to all other railroads in this State."

*Second,* The contract in question was impliedly authorized by the act of incorporation. It was, in fact, a mere appointment of agents or employés to run the road, making it for their advantage to economize and advance the interests of the road by paying them upon a sliding scale. Although the words " lease" and " lessees" are employed, its terms show that the plaintiffs were in no respect lessees in a legal sense. It was confined to twenty years. The company could put an end to it and retake possession upon three months' notice. The contract would terminate by the death of either of the so-called lessees, or by their omission to make the regular payments. They were required forthwith to discharge from their employment any person employed by them whom the company, through its directors, should wish removed. The plaintiffs were to pay to the company one-half the gross amount received, and to secure their covenant to keep the rolling-stock, &c., in good repair, by depositing yearly a sum of $10,000 with a trustee, who acted as agent for the company. This case essentially differs from those in which it has been held that a contract whereby a railroad company engages to employ the corporate funds in a manner not authorized by the charter is void, and that its execution will, upon the application of a shareholder, be restrained by a court of chancery, and from those in which such a contract has by a common-law court been declared to be impliedly forbidden by the legislature, and therefore void as against public policy.

This fund was to be appropriated under the directions of the company for repairing and replacing the track, roadbed, and rolling-stock. Any dispute as to what were current repairs (to which no portion of this fund was to be applied), and what were repairs to perpetuate the road and rolling-

stock, was to be settled by an agent of the company. This fund was to be applied by the trustee upon the order of, and only to the purposes designated by, the Millville company.

No definition of a lease can be framed which will comprehend such an agreement. It was, in truth, an appointment of three agents to take charge of a small road a few miles long.

*Third*, The objection of *ultra vires* cannot be maintained in this case. The funds of the corporation were not engaged outside of the scope of the object of its charter; and although it devolved some of its administrative duties to others, the supervision of the directors was not withdrawn, and the rights of the shareholders were carefully secured. *Robbins* v. *Embry*, 1 Smed. & M. (Miss.) Ch. 268, 269 ; *Llanelly Railway & Dock Co.* v. *London & Northwestern Railway Co.*, Law Rep. 8 Ch. 942.

An instrument providing that a railroad shall be run, not directly by the corporation, but by agents appointed by it, has never been declared invalid. *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459. It is not a valid objection that the plaintiffs should be primarily liable to the public. *Langley* v. *Boston & Maine Railroad*, 10 Gray (Mass.), 103. The corporation remained bound. It has never attempted to evade the duties nor escape from the responsibilities imposed by its charter; and it could not successfully do so. *York & Maryland Line Railroad Co.* v. *Winans*, 7 How. 30; *Bissell* v. *The Michigan & Northern Indiana Railroad Co.*, 22 N. Y. 258.

II. The contract was authorized, inasmuch as it was neither directly nor impliedly forbidden; was germane to the object for which the company was formed, and would have been valid at common law, if made by a corporation created by charter.

A corporate body may (as at common law) do any act which is not either expressly or impliedly prohibited by its charter; although where the act is unauthorized a shareholder may enjoin its execution; and the State may, by proper process, forfeit the charter.

The real position being in such cases, Has the charter pro-

hibited the contract sought to be enforced; if it has, has the prohibited portion been completely executed; if it has not, have the partners, the shareholders in the corporation, ratified the act which their agents, the directors, were, as against them, unauthorized to perform? *Taylor* v. *Chichester & Midhurst Railway Co.*, Law Rep. 2 Ex. 356; *The Mayor of Norwich* v. *Norfolk Railway Co.*, 4 El. & Bl. 397; *East Anglian Railways Co.* v. *The Eastern Counties Railway Co.*, 11 C. B. 775; *Chambers* v. *Manchester & Milford Railway Co.*, 5 B. & S. 588; *South Wales Railway Co.* v. *Redmond*, 10 C. B. N. S. 675; *Bateman* v. *Mayor, &c. of Ashton-under-Lyne*, 3 H. & N. 323; *Shrewsbury & Birmingham Railway Co.* v. *The Northwestern Railway Co.*, 6 H. of L. 113, 136.

The authorities establish the proposition that a contract not forbidden may be enforced, where the shareholders have assented. In this case there was a prior unanimous assent and a subsequent unanimous ratification, and the illegal part, if any, of the contract has been completely executed.

III. The defence of *ultra vires* is inadmissible to an action against a corporation upon its contract duly made, where (if not wholly executed) all the shareholders have acquiesced in its performance, or where the contract has been wholly performed by the other party without objection on the part of the corporation, or any of the shareholders. *Graham* v. *Birkenhead Railroad Co.*, 2 Mac. & G. 146; *Phosphate of Lime Company* v. *Green*, Law Rep. 7 C. P. 43, 62, 63; *The Erie Railway Co.* v. *The Delaware, Lackawanna, & Western and The Morris & Essex Railroad Companies*, 21 N. J. Eq. 283, 289; *Riche* v. *The Ashbury Railway Carriage & Iron Co.*, Law Rep. 9 Exch. 244.

Where the transaction is complete, and nothing remains to be done by the party seeking relief, the plea of *ultra vires* is not available by the corporation in an action brought against it for not performing its side of the contract. *The Silver Lake Bank* v. *North*, 4 Johns. (N. Y.) Ch. 370, 373; *Gold Mining Company* v. *National Bank*, 96 U. S. 640; *National Bank* v. *Matthews*, 98 id. 621; *Steamboat Company* v. *McCutcheon & Collins*, 13 Pa. St. 13; *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490, 495; *Bissell* v. *Michigan Southern & Northern Indiana*

*Railroad Companies*, 22 id. 258, 272, 273; *Whitney Arms Company* v. *Barlow*, 63 id. 62, 68, 69; *Steam Company* v. *Weed*, 17 Barb. (N. Y.) 378; *Moss* v. *Mining Company*, 5 Hill (N. Y.), 137; *Grant* v. *Henry Clay Coal Co.*, 80 Pa. St. 208, 218; *Oil Creek & Allegheny River Railroad Co.* v. *Pennsylvania Transportation Co.*, 83 id. 160; *McCluer* v. *Manchester & Lawrence Railroad*, 13 Gray (Mass.), 124; *Gifford* v. *New Jersey Railroad Co.*, 2 Stock. (N. J.) 177; *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459, 476; *Smith* v. *Sheeley*, 12 id. 358, 361; *Kelly* v. *Transportation Company*, 3 Oreg. 189; *Weber* v. *Agricultural Society*, 44 Iowa, 239; *Showalter* v. *Pirner*, 55 Mo. 233; *Chambers* v. *City of St. Louis*, 29 id. 543; *Land* v. *Coffman*, 50 id. 243; *Wade* v. *Colonization Society*, 7 Smed. & M. (Miss.) 663, 697; *Robbins* v. *Embry*, supra.

IV. If the contract were originally *ultra vires*, it was ratified, and, for the future, authorized by the act of 10th April, 1867. P. L. of New Jersey of 1867, p. 915; Record, 40.

It is a well-settled principle of law that statutes, by implication, ratify and legalize former unauthorized proceeding of a corporation, where the unlawful act is mentioned or referred to in them as a proper one; and if the act be a continuing one, it is authorized for the future. *The Ecclesiastical Commissioners for England* v. *Northeastern Railway Co.*, 4 Ch. Div. 845.

*Mr. Samuel Dickson, contra.*

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

The ground on which the court held the contract to be void and on which the ruling is supported in argument here, is, that the contract amounted to a lease, by which the railroad, rolling-stock, and franchises of the corporation were transferred to plaintiffs, and that such a contract was *ultra vires* of the company.

It is denied by the plaintiffs that the contract can be fairly called a lease.

But we know of no element of a lease which is wanting in this instrument. "A lease for years is a contract between lessor and lessee, for possession of lands, &c., on the one side, and

a recompense by rent or other consideration on the other."
4 Bac. Abr. 632.

" Any thing corporeal or incorporeal lying in livery or in
grant may be the subject-matter of a lease, and, therefore, not
only lands and houses, but commons, ways, fisheries, franchises,
estovers, annuities, rent-charges, and all other incorporeal here-
ditaments are included in the common-law rule."    Bouv. L. D.,
" Lease ; " 1 Wash. Real Prop. 310.

The railroad and all its appurtenances and franchises, includ-
ing the right to do the business of a railroad and collect the
proper tolls, are for a period of twenty years leased by the com-
pany to the plaintiffs, from whom in return it receives as rent
one-half of all the gross earnings of the road.    The usual pro-
vision for a right of re-entry on the failure to perform cove-
nants in addition to the special right to terminate the lease on
notice, and the usual covenant for repairs and proper running
of the road, equivalent to good husbandry on a farm, are inserted
in the instrument.

The provision for the complete possession, control, and use of
the property of the company and its franchises by the lessees is
perfect.    Nothing is left in the lessor but the right to receive rent.
No power of control in the management of the road and in the
exercise of the franchises of the company is reserved.    A solitary
exception to this statement, of no value in the actual control
of affairs, is found in the sixth clause of the lease, which cove-
nants that the lessees will discharge any one in their service on
the request of the corporation, evidenced by a resolution of the
board of directors.

But while we are satisfied that the contract is both techni-
cally and in its essential character a lease, we do not see that
the decision of that point either way affects the question on
which we are to pass.    That question is, whether the railroad
company exceeded its powers in making the contract, by what-
ever name it may be called, so that it is void.

It is, perhaps, as well to consider this question in the order
of its presentation by the learned counsel for plaintiffs, upon
whom the burden of showing the error of the Circuit Court
devolved the duty of proving one of the following proposi-
tions : —

1. The contract was within the powers granted to the railroad company by the act of the New Jersey legislature under which it was organized.

2. That if this be not established, the lease was afterwards ratified and approved by another act of that legislature.

3. That if both these propositions are found to be untenable, the contract became an executed agreement under which the rights acquired by plaintiffs should be legally respected.

The authority to make this lease is placed by counsel primarily in the following language of the thirteenth section of the company's charter: —

" That it shall be lawful for the said company, at any time during the continuance of its charter, to make contracts and engagements with any other corporation, or with individuals, for the transporting or conveying any kinds of goods, produce, merchandise, freight, or passengers, and to enforce the fulfilment of such contracts."

This is no more than saying, " you may do the business of carrying goods and passengers, and may make contracts for doing that business. Such contracts you may make with any other corporation or with individuals." No doubt a contract by which the goods received from railroad or other carrying companies should be carried over the road of this company, or by which goods or passengers from this road should be carried by other railroads, whether connecting immediately with them or not, are within this power, and are probably the main object of the clause. But it is impossible, under any sound rule of construction, to find in the language used a permission to sell, lease, or transfer to others the entire road and the rights and franchises of the corporation. To do so is to deprive the company of the power of making those contracts which this clause confers and of performing the duties which it implies.

In *The Ashbury Railway Carriage & Iron Co.* v. *Riche*, decided in the House of Lords in 1875 (Law Rep. 7 H. L. 653), the memorandum of association, which, as Lord Cairns said, stands under the act of 1862 in place of a legislative charter, thus described the business which the company was authorized to conduct: " The objects for which this company is established are to make, sell, or lend on hire, railway-carriages and

engines, and all kinds of railway plant, fittings, machinery, and rolling-stock; and to carry on the business of mechanical engineers and general contractors; to purchase and sell as merchants, timber, coal, metals, or other materials; and to buy and sell any such materials on commission or as agents." This company purchased a concession for a railroad in Belgium, and entered into a contract for its construction, on which it paid large sums of money. The company was sued afterwards on its agreement with Riche, the contractor, and the contract was held valid in the Exchequer Chamber by a majority of the judges, on the ground that while it was in excess of the power conferred on the directors by the memorandum, it had been made valid by ratification of the shareholders, to whom it had been submitted.

The House of Lords reversed this judgment, holding unanimously that the contract was beyond the powers conferred by the memorandum above recited, and being beyond the powers of the association, no vote of the shareholders whatever could make it valid. The case is otherwise important in its relation to the one before us, but it is cited here for its parallelism in the construction of the clause defining the powers of the company.

If a memorandum which describes the parties as engaging in furnishing nearly all the materials, machinery, and rolling-stock which enter into the construction of a railroad and its equipments, and then empowers them to carry on the business of *mechanical engineers and general contractors*, cannot authorize a contract to build a railroad, surely the authority to build a railroad and to contract for carrying passengers and goods over it and other roads is no authority to lease it and with the lease to part with all its powers to another company or to individuals. We do not think there is any thing in the language of the charter which authorized the making of this agreement.

It is next insisted, in the language of counsel, that though this may be so, "a corporate body may (as at common law) do any act which is not either expressly or impliedly prohibited by its charter; although where the act is unauthorized by the charter a shareholder may enjoin its execution; and the State may, by proper process, forfeit the charter."

We do not concur in this proposition. We take the general doctrine to be in this country, though there may be exceptional cases and some authorities to the contrary, that the powers of corporations organized under legislative statutes are such and such only as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others.

This class of subjects has received much consideration of late years in the English courts, and counsel have relied largely on the decisions of those courts. Among the cases cited by both sides is *The East Anglian Railways Co.* v. *The Eastern Counties Railway Co.*, 11 C. B. 775.

In that case the Eastern Counties Railway Company had made a contract in which, among other things, it covenanted to take a lease of several other railroads whose companies had introduced into Parliament a bill for consolidation under the name of East Anglian Railways Company, and to assume the payment of the parliamentary expenses of this act of consolidation.

This covenant was held void as beyond the power conferred by the charter. "They cannot," said the court, "engage in a new trade, because they are incorporated only for the purpose of making and maintaining the Eastern Counties Railway. What additional power do they acquire from the fact that the undertaking may in some way benefit their line? Whatever be their object or prospect of success, they are still but a corporation for the purpose only of making and maintaining the Eastern Counties Railway; and if they cannot embark in new trades because they have only a limited authority, for the same reason they can do nothing not authorized by their act and not within the scope of their authority." This case, decided in 1851, was afterwards cited with approval by the Lord Chancellor in 1857 in delivering the opinion of the House of Lords in *Eastern Counties Railway Co.* v. *Hawkes* (5 H. L. Cas. 331); and it is there stated that it was also acted on and recognized in the Exchequer Chamber in *McGregor* v. *The Deal & Dover Railway Co.*, 22 Law J. N. s. Q. B. 69;

18 Q. B. 618. Both these cases are cited approvingly in the opinion of Lord Cairns in the Ashbury Company, on appeal in the House of Lords.

This latter case, as decided in the Exchequer Chamber (Law Rep. 9 Exch. 224), is much relied on by counsel for plaintiffs here as showing that, though the contract may be *ultra vires* when made by the directors, it may be enforced if afterwards ratified by the shareholders or if partly executed.

But in the House of Lords, where the case came on appeal, this principle was overruled unanimously in opinions delivered by Lord Chancellor Cairns, Lords Selborn, Chelmsford, Hatherly, and O'Hagan, and the broad doctrine established that a contract not within the scope of the powers conferred on the corporation cannot be made valid by the assent of every one of the shareholders, nor can it by any partial performance become the foundation of a right of action.

It would be a waste of time to attempt to examine the American cases on the subject, which are more or less conflicting, but we think we are warranted in saying that this latest decision of the House of Lords represents the decided preponderance of authority, both in this country and in England, and is based upon sound principle.

There is another principle of equal importance and equally conclusive against the validity of this contract, which, if not coming exactly within the doctrine of *ultra vires* as we have just discussed it, shows very clearly that the railroad company was without the power to make such a contract.

That principle is that where a corporation, like a railroad company, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions which undertakes, without the consent of the State, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State, and is void as against public policy. This doctrine is asserted with remarkable clearness in the opinion of this court, delivered by Mr. Justice Campbell, in *The York &*

*Maryland Line Railroad Co.* v. *Winans*, 17 How 30. The corporation in that case was chartered to build and maintain a railroad in Pennsylvania by the legislature of that State. The stock in it was taken by a Maryland corporation, called the Baltimore and Susquehanna Railroad Company, and the entire management of the road was committed to the Maryland company, which appointed all the officers and agents upon it, and furnished the rolling-stock. In reference to this state of things and its effect upon the liability of the Pennsylvania corporation for infringing a patent of the defendant in error, Winans, this court said: " This conclusion [argument] implies that the duties imposed upon the plaintiff by the charter are fulfilled by the construction of the road, and that by alienating its right to use, and its powers of control and supervision, it may avoid further responsibility. But those acts involve an overturn of the relations which the charter has arranged between the corporation and the community. Important franchises were conferred upon the corporation to enable it to provide facilities for communication and intercourse, required for the public convenience. Corporate management and control over these were prescribed, and corporate responsibility for their insufficiency provided as a remuneration to the community for their grant. The corporation cannot absolve itself from the performance of its obligations without the consent of the legislature. *Beman* v. *Rufford*, 1 Sim. N. S. 550; *Winch* v. *B. & L. Railway Co.*, 13 L. & Eq. 506."

And in the case of *Black* v. *Delaware & Raritan Canal Co.*, 22 N. J. Eq. 130, Chancellor Zabriskie says: " It may be considered as settled that a corporation cannot lease or alien any franchise, or any property necessary to perform its obligations and duties to the State, without legislative authority." p. 399. For this he cites some ten or twelve decided cases in England and in this country.

This brings us to the proposition that the legislature of New Jersey has given her consent by an act which amounts to a ratification of this lease.

That act is entitled " A supplement to the act entitled ' An Act to incorporate the Millville and Glassboro Railroad Company,' " approved April 10, 1867; and its only purpose was to

regulate the rates at which freight and passengers should be carried. It reads as follows: —

"That it shall be unlawful for the directors, *lessees*, or *agents* of said railroad to charge more than three and a half cents per mile for the carrying of passengers, and six cents per ton per mile for the carrying of freight or merchandise of any description, unless a single package, weighing less than one hundred pounds; nor shall more than one-half of the above rate be charged for carrying any fertilizing materials, either in their own cars or cars of other companies running over said railroad : *Provided*, that nothing contained in this act shall deprive the said railroad company, *or its lessees*, of the benefits of the provisions of· an act entitled 'An Act relative to freights and fares on railways in the State,' approved March 4, 1858, and applicable to all other railroads in this State."

It may be fairly inferred that the legislature knew at the time the statute was passed that plaintiffs were running the road, and claiming to do so as lessees of the corporation. It was not important for the purpose of the act to decide whether this was done under a lawful contract or not. No inquiry was probably made as to the terms of that lease, as no information on that subject was needed.

The legislature was determined that whoever did run the road and exercise the franchises conferred on the company, and under whatever claim of right this was done, should be bound by the rates of fare established by the act. Hence, without undertaking to decide in whom was the right to the control of the road, language was used which included the directors, lessees, and agents of the railroad.

The mention of the lessees no more implies a ratification of the contract of lease than the word "directors" would imply a disapproval of the contract. It is not by such an incidental use of the word "lessees" in an effort to make sure that all who collected fares should be bound by the law, that a contract unauthorized by the charter, and forbidden by public policy, is to be made valid and ratified by the State.

It remains to consider the suggestion that the contract, having been executed, the doctrine of *ultra vires* is inapplicable to the case. There can be no question that, in many instances,

where an invalid contract, which the party to it might have avoided or refused to perform, has been fully performed on both sides, whereby money has been paid or property changed hands, the courts have refused to sustain an action for the recovery of the property or the money so transferred.

In regard to corporations, the rule has been well laid down by Comstock, C. J., in *Parish* v. *Wheeler* (22 N. Y. 494), that the executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith require it.

But what is sought in the case before us is the enforcement of the unexecuted part of this agreement. So far as it has been executed, namely, the four or five years of action under it, the accounts have been adjusted, and each party has received what he was entitled to by its terms. There remains unperformed the covenant to arbitrate with regard to the value of the contract. It is the damages provided for in that clause of the contract that are sued for in this action. Damages for a material part of the contract never performed; damages for the value of a contract which was void. It is not a case of a contract fully executed. The very nature of the suit is to recover damages for its non-performance. As to this it is not an executed contract.

Not only so, but it is a contract forbidden by public policy and beyond the power of the defendants to make. Having entered into the agreement, it was the duty of the company to rescind or abandon it at the earliest moment. This duty was independent of the clause in the contract which gave them the right to do it. Though they delayed its performance for several years, it was nevertheless a rightful act when it was done. Can this performance of a legal duty, a duty both to stockholders of the company and to the public, give to plaintiffs a right of action? Can they found such a right on an agreement void for want of corporate authority and forbidden by the policy of the law? To hold that they can, is, in our opinion, to hold that any act performed in executing a void contract makes all its parts valid, and that the more that is done under a contract forbidden by law, the stronger is the claim to its enforcement by the courts.

We cannot see that the present case comes within the principle that requires that contracts which, though invalid for want of corporate power, have been fully executed shall remain as the foundation of rights acquired by the transaction.

We have given this case our best consideration on account of the importance of the principles involved in its decision, and after a full examination of the authorities we can see no error in the action of the Circuit Court.

*Judgment affirmed.*

MR. JUSTICE BRADLEY did not sit in this case.