## Cass v. Manchester Iron & Steel Co. and others.

*(Circuit Court, W. D. Pennsylvania. December 27, 1881.)*

1. CORPORATIONS—POWERS.
     The charter of a corporation is the measure of its powers, and the enumeration of these powers implies the exclusion of all others.
2. SAME—PARTICULAR CHARTER CONSTRUED.
     The Manchester Iron & Steel Company, a private corporation incorporated by an act of the legislature of Pennsylvania, has no power under its charter to lease its plant.
3. SAME—POWER OF THE BOARD OF DIRECTORS.
     Even if such power exists in the corporation, the board of directors cannot exercise it against the protest of the owner of a majority of the stock.

In Equity. Motion for preliminary injunction.

*George Gray* and *Knox & Reed,* for complainant.

*Hampton & Dalzell,* for respondents.

McKENNAN, C. J. The Manchester Iron & Steel Company is a private corporation, authorized by an act of the legislature of Pennsylvania, passed April 29, 1874. By the certificate of its incorporation it is placed in the class of corporations for profit, and under the seventeenth division of that class, as a corporation for "the manufacture of iron or steel, or both, or any other metal, or of any article of commerce from metal or wood, or both." Its powers, therefore, are derived from and are defined by the thirty-eighth section of the act, which relates specially to corporations of that description. The first clause of that section, which is the only portion of it that is material, provides that—

"Every such corporation may, in the manner prescribed in this act, increase its capital stock to an amount not exceeding $5,000,000, and shall have the right to purchase, lease, hold, mortgage, and sell real estate and mining rights, to prove and open mines, to mine and prepare for market, or for their own use and consumption, coal, iron ore, and other minerals, and to erect and construct furnaces, forges, mills, foundries, manufactories, and such other improvements and erections as they may deem necessary, and to manufacture iron and steel, or any other metal, or either thereof, in all shapes and forms, and either of these metals, exclusively or in combination with other metals, or with wood, and to transport all of said articles or any of them to market, and to dispose of the same, and do all such other acts and things as a successful and convenient prosecution of said business may require, provided they shall not, at any time, have more than 10,000 acres of land within this commonwealth, including leased lands."

The organization of the company defendant embraces a president and four directors, of whom the complainant is one, and represents,

in his own right, a majority of the stock issued by the corporation. In that character he files his bill, alleging that the annual election of directors by the stockholders is to occur on the nineteenth of January, 1882, and that a majority of the board of directors have determined and propose, against his protest, before the annual election, to lease the whole plant of the corporation for a term of not less than five years, with an option in the lessee to purchase the premises at a price to be fixed in the contract. He therefore asks the intervention of this court to restrain the proposed action of the directors.

The respondents admit that they propose to lease the property of the corporation to a responsible tenant for a term of not less than five years and not exceeding ten, at an annual rental of not less than $20,000, with additional incidental payments to be made by the lessee, and they allege that the completion of this arrangement requires prompt action on their part, and that it was, in the highest degree, conducive to the interests of the stockholders.

In the view we take of the case, it is unnecessary to consider whether the contemplated lease is expedient or not. Under ordinary circumstances that consideration is addressed solely to the discretion and judgment of the governing power of the corporation, and a court of equity would not, therefore, assume to control it.

The primary question is, has the corporation the power, under its charter, to make the proposed lease, and if so, ought it to be exercised by the directors without reference to or against the judgment of the stockholders? A charter ought to be liberally construed to effectuate the object of the creation of the body corporate, but it cannot be regarded as possessing any power which is not conferred upon it by express grant or clear implication. The rule as stated by Mr. Justice Miller in *Thomas* v. *Railroad Co.* 101 U. S. 82, is—

"That the powers of corporations organized under legislative statutes are such and such only as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

The corporation in this case is a manufacturing association, resulting from its statutory classification and its description in letters patent. The fundamental object of the association, as declared by law, is the manufacturing of iron and steel, or other metals, either separately, or in combination with each other, or with wood, and it

is obvious that the powers conferred upon it are incidental and aux-
iliary to the main purpose of its creation, and are to be exercised
through its corporate organization. In the thirty-eighth section of
the statute (quoted above) the powers of the corporation are enu-
merated specifically, but the power to lease is not found in this enu-
meration. In the language of Judge Miller, this omission "implies
the exclusion" of such power. The power to lease is given, but it is
to acquire property in that mode. Even if it can be construed other-
wise, or can be implied from, or is embraced in, the express power to
sell, as was argued, it is limited in its exercise to real estate and
mining rights, and does not comprehend the entire plant of the cor-
poration.

We are of opinion, then, that the charter contemplates and author-
izes the prosecution of the business described in it, by the corporation
itself, by the direct agency and under the supervision, manage-
ment, and administration of the corporate officers whom the stock-
holders may select for that purpose; and that a contract which
involves a relinquishment of this faculty, or a transfer of it to others,
is beyond the scope of the power of the corporation.

But if this conclusion is the result of too strict a construction of
the charter, we are of opinion that the power in question is not exer-
cisable independently of the judgment of the stockholders. The
directors and officers of a corporation are its exclusive executive
agents, and, as it can only act by and through them, the powers
vested in the corporation are deemed to be conferred upon its repre-
sentatives; but they are, nevertheless, trustees for the stockholders.
The law recognizes the stockholders as the ultimately controlling
power in the corporation, because they may, at each authorized elec-
tion, entirely change its organization, and may, at any time, keep
their trustees within the line of faithful administration by an appeal
to a court of equity. Hence, it has been held that the directors of a
corporation cannot alone increase its capital stock, where such in-
crease was authorized by its charter, "at the pleasure of said corpo-
ration," and where it was provided "that all the powers of said cor-
poration shall be vested in and exercised by a board of directors," etc.;
and this for the reason that "the general power to peform all corpo-
rate acts refers to the ordinary business transactions of the corpora-
tion," and not to a change so fundamental and organic. 18 Wall.
234.

The change proposed here is not organic, it is true, but it is thorough
and fundamental, as it affects the administration of the company's

affairs. It involves a withdrawal from the control and management of the stockholders of the entire property of the corporation for a period of at least five years; it will preclude for a like period the exercise annually by the stockholders of their judgment as to the particular character and method of conducting the business affairs of the corporation; and it denies to the stockholders any right of suggestion or disapproval of the conditions upon which a relinquishment of important corporate faculties may be conceded. Surely a power which will be attended with such consequences does not relate "to the ordinary business transactions," nor "to the orderly and proper administration of the affairs," of the company, and hence cannot be exercised by the directors without express authority to them.

But the fact is conceded that the complainant represents a majority of the stock issued by the corporation, and he has made known to us in his bill that the proposed lease is repugnant to his judgment. We are therefore called upon to decide, not merely that it may be made by the directors without consulting their constituents, but against the protest of a majority of them. This we cannot do, but order that a preliminary injunction be issued as prayed for.