(Hamilton County Common Pleas Court.)

BENEDICT AND MINER, TRUSTEES
v. THE MARKET NATIONAL BANK
et al.

---

*Jurisdiction—Endorsement of a note by a corporation—Secret inchoate preference—*

1. The common pleas court has, and the court of insolvency has not, jurisdiction in a proceeding to set aside a conveyance made to hinder, delay or defraud creditors.

2. A note endorsed by a corporation, and evidencing a loan from a bank, the proceeds of which went to an individual with the bank's knowledge, is wholly ultra vires as to the corporation.

3. There is no doubt that a going, solvent corporation may give a valid security to its creditor; but to say that a corporation can create and give to one of its creditors a secret inchoate preference, and let its other creditors continue and extend credit to it, and then after insolvency, in the very article of collapse and assignment, upon a preconcerted signal given, such creditor can come in and make such preference absolute and settle down on the assets of the corporation to the exclusion of other creditors, would

be to violate the established rule of this state as to failing and insolvent corporations giving preferences, to ignore the doctrine of the case of Rouse, trustee, v. Merchants' National Bank, 46 Ohio St., 493, and to permit an evasion of the principles therein laid down as determining our policy in this regard.

---

JELKE, J.

I.

I will first determine the question of jurisdiction, as any consideration of the legal issues involved in this case would be idle if this court has not jurisdiction to try the same.

It is contended by counsel for the defendant, The Market National Bank, that if plaintiffs have a cause of action, they should pursue their remedy in the court of insolvency, and not in the court of common pleas.

The last expression of the supreme court on the jurisdiction of the probate court, i. e., for this case the court of insolvency, is in Mercer v. Cunningham, 53 Ohio St., p. 361, where Shauck, J., sums up the decisions down to date in two propositions.

1. The filing of the deed of assignment and the qualifications of the assignee confer upon the probate court jurisdiction of all the assigned property.

2. The jurisdiction so conferred, is exclusive in all respects in which it is adequate, citing Sayler v. Simpson, 45 Ohio St., 141; Havens v. Horton, 53 Ohio St., 342, and Dwyer v. Garlaugh, 31 Ohio St., 158.

It is apparent from this statement that where the jurisdiction of the court of common pleas and the court of insolvency is in other respects concurrent, and where assignment occurs before commencement of suit in common pleas, the jurisdiction of the court of insolvency becomes exclusive, because said latter court has jurisdiction of all the assigned property.

The powers of the court of insolvency, legal and equitable, are only such as are conferred upon it by statute, and such as are necessarily incident to the exercise of its statutory powers. This is held to give such court the widest scope in law and equity in determining the validity and priority of liens on property which has come under its jurisdiction. But the court of insolvency or the probate court, have never been held to have equitable jurisdiction to set aside a conveyance whereby the assignor has parted with possession, and where, by assignment, the possession of the property has not passed to the assignee, and thus come into the jurisdiction of the court. Said courts have never been held to have jurisdiction to try equitable questions between persons, only in the course of their administration upon the res. Saxton v. Seiberling, 48 Ohio St., 554, 558, 559; Spears v. Coen, 44 Ohio St., 497; 17 W. L. B., 64.

In the case at bar the cognovit note, judgment thereon, levy of execution and seizure of chattels amount to a conveyance.

Bloomingdale v. Stein, 42 Ohio St., 168.

Hence, by virtue of the assignment, the assignee never got possession of the property, and it never came under the jurisdiction of the court of insolvency.

The assignee, by agreement with the sheriff, approved by the court of insolvency, took possession of the property, said agreement, however, precluding any submission of the property to the jurisdiction of the court of insolvency, so far as the asserted interest of the Market National Bank therein was concerned.

So far as the asserted interest therein of the Market National Bank in concerned, the possession of said property by the assignee has always continued to be virtually the possession of the sheriff.

Having found the proceedings and levy to be a conveyance, I further find that the allegations of the petition, admitted by the demurrer, set out the substantive facts of a conveyance made by a debtor to hinder, delay and defraud creditors, a suit to avoid which under the provisions of Rev. Stat., 344, can only be maintained in this court.

I further find that an examination of the validity of the "conveyance" from the assignor to said bank involves an attack upon impeachment, and setting aside of a judgment of this court, a proceeding manifestly beyond the jurisdiction of the court of insolvency.

I am of opinion that the court of insolvency has no jurisdiction to entertain this action, and that this court of common pleas has.

## II.

Consideration of the case proper, begins with the transaction of February, 1893. I do not attach much importance to the question as to the authority of the director who in the beginning first endorsed the corporate name upon this paper.

The denial of such authority, as set out on pages 5 and 6 of the petition, is rather a denial of any special authorization than a denial of any authority whatever.

But be this as it may, conceding that such endorsement was wholly unauthorized, if the transaction was in other respects regular and within the powers of the corporation, this would be a defect which could, and probably was, cured by subsequent ratification and continued recognition of the liability by the managing officers of the company.

Neither do I give weight to the point in defendant's brief that on the pleading as it stands, applying rules of strict construction against the pleader, said company became and was a joint maker on the original paper.

If this were a genuine corporate act, such construction would not increase or strengthen the company's liability.

The real inquiry is, when the name of "The Miner & Rossiter Company" was first put upon the paper, was it a corporate act; was it an act within the scope of the business for which said company was organized: did the

company receive anything as a consideration for this pledge of its credit, and was this act within the corporate powers of said company? A determination of these questions bears directly upon the rights of the defendant bank, as it is alleged that all the circumstances and the true nature of this transaction were at all times known to the acting officer of said bank. I am of opinion that in February, 1893, such endorsement was not an act within the scope of the business for which said company was organized; that said company received no consideration, and that this act was, as to such company, wholly ultra vires.

It is within the scope of the business of a corporation organized for the purpose of manufacturing and dealing in furniture, to create and sustain almost any relation to mercantile paper connected with furniture transactions; but this was not that kind of paper. It is alleged that the money, proceeds of these notes, was intended to and did go to Rossiter, and not to the company, all to the knowledge of the bank's cashier, Mr. Casper Row.

If this is so, any self-serving entry on the bank's books avails the defendant nothing. I think that this act was wholly ultra vires. Coppin vs Greenless & Ransom Co, 38 O. S., 275, a fortiori in the case at bar, because here the company did not even get the stock being its own, for which its credit was pledged, but said stock went to Miner & Moore. I therefore conclude that the name of "The Miner & Rossiter Company", being one and the same, upon this paper simply amounted to nothing in the way of creating liability to the Market National Bank. This being so, any kind of ratification, the strongest imaginable, or any number of renewals could not change it or create a liability. E nihilo nihil fit.

The question of estoppel can not arise as to any of the $5,500 sets of notes, and prior to April, 1896, for two reasons:

1st, because the bank had actual knowledge of all the facts; and

2d, because the company never received anything from the bank..

There is nothing for the company to give up in order becomingly to occupy the locus poenitentiae. The opinion of Worthington, J., Force and Harmon, JJ, concurring, in Voss v. Building Association. 9. W. L. B., 199, is so in accord with the leading English and United States Supreme Court cases, that it is unnecessary to go out of this county for authority as to the utter nothingness of such ultra vires acts.

Also, see: Columbus, H. V. & T. Ry. vs, Burke, 54. O. S., 98 123; Humboldt Mining Co. vs Merz Capsule Co., 37 U. S., App, 602 610; Thomas vs. Railroad Co, 101 U. S. 71-73; Central Transportation Co vs Pullman Car Co., 139 U. S., 24-60; Railway Companies vs Keokuk Bridge Co., 131 U.S. 371 389; Ashbury Ry., Carriage & Inn. Co. vs Riche L. R. 7 H. L., 653-672, per Lord Chancellor Cairns.

### III

This brings us to April, 1896, and the giving of the $9,000 cognovit note.

Sifting this $9,000 note, it develops that this note is made up of the $5,500 obligation of Miner and Moore on which the Company was not at all liable, $2,000 note of the company to the bank, and $1,500 cash advanced by the company at this time.

The bank entries made at his time cut no figure when the real transaction is laid bare and the ultimate facts revealed. The very elaborateness of such book keeping devices only tends, when once penetrated, to create a prejudice against the good faith of the transaction.

The dragging of this $5,500 into the $9,000 note makes this $9,000 note as void as was the $5,500 obligation. True, the bank has claim on the company for $3,500 for money had and received, but on this $9,000 note the bank can recover nothing.

It is further alleged that this $9,000 cognovit note was given to the bank with the arrngement "that in the event that said company should become insolvent, and find it necessary to make an assignment for the benefit of its creditors, said bank or its officers should be notified, so that said note might be reduced to judgment and a levy made upon the assets of said company, to the end that just previous to the time of said assignment said bank might acquire a preference over all the other creditors of said company for the amount of said note to-wit, $9,000; that said agreement was acted upon, etc. There is no doubt that a going. solvent corporation may give a valid security to its creditor; but to say that a corporation can create and give to one of its creditors a secret inchoate preference, and let its other creditors continue and extend credit to it, and then after insolvency, in the very article of collapse and assignment, upon a preconcerted signal given, such creditor can come in and make such preference absolute and settle down on the assets of the corporation to the exclusion of other creditors, would be to violate the established rule of this state as to failing and insolvent corporations giving preferences, to ignore the doctrine of the case of Rouse, trustee, vs Merchants' National Bank, 46 Ohio St., 493, and to permit an evasion of the principles therein laid down as determining our policy in this regard. I am of opinion that the $9,000 note, the judgment and levy, the agreement with the assignee, and everything connected with said note, is absolutely null and void.

The claim of defendant bank against said company for $3,500 should be allowed among he general creditors.

t The demurrer will be overruled, with leave of defendant to answer. If defendant does not desire to answer, judgment may be entered accordingly.

Edward Barton, for general creditors.

Adam Kramer and W. F. Gray for the Bank.