HARRIET ARNOT, Executrix, etc., et al., Respondents, *v.* THE ERIE RAILWAY COMPANY, Appellant.

Defendant, in pursuance of an agreement with the B., H. and E. R. R. Co., guaranteed the payment of the interest coupons to the bonds of the latter corporation, a written guaranty thereof being indorsed upon each bond.  Defendant subsequently became possessed of said bonds and transferred a portion of them, with the coupons and guaranties, to plaintiffs' testator for value.  In an action upon the guaranties, *held* (ALLEN, J., dissenting), that, even if the guaranties when made were *ultra vires*, and therefore not binding, defendant having transferred the bonds with the guaranties thereon uncanceled, it was to be presumed that they were intended to be, and were, taken by the purchaser as additional security and as part of the purchase; that they were to be treated as if written at the time of the transfer; and, so treating them, it was immaterial that the true consideration was not expressed therein.

Also, *held*, that it was immaterial that the above view was not taken by the trial court, or that it rests upon facts not specifically found; that being based upon undisputed facts and just inferences therefrom, it was permissible in support of the judgment.

(Argued April 26, 1876; decided November 21, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiffs entered upon the decision of the court at Special Term. (Reported below, 5 Hun, 638.)

This action was brought upon certain alleged guaranties executed by defendant indorsed upon the bonds of the Boston, Hartford and Erie Railroad Company.

In October, 1867, defendant and the said The Boston, Hartford and Erie Railroad Company entered into a contract whereby the former agreed to guaranty the payment of interest upon a certain amount of the bonds of the latter in consideration of the latter constructing a road connecting the roads of the two companies, and agreeing to conduct the business passing from one road to the other on joint account.

Under this agreement the latter company issued its bonds of $1,000 each, with interest coupons or warrants attached, both negotiable. Indorsed upon each was a guaranty in the following form :

" In consideration of the provisions of a contract of even date for the use of the Boston, Hartford and Erie railroad by the Erie Railway Company, the Erie Railway Company hereby agrees with the holder of this bond that the several interest warrants hereto attached shall be paid as they respectively mature.

" Witness the seal of the Erie Railway Company and the signature of its secretary, at the city of New York, the 8th day of October, 1867.

" HORATIO N. OTIS, *Secretary.*"

Defendant subsequently became possessed of all these bonds, and those in question in this action were transferred to John Arnot, plaintiffs' testator. The circumstances under which he acquired title and further facts pertinent to the question presented are set forth sufficiently in the opinion.

*W. W. Macfarland* for the appellant. Corporations have only such powers as are expressly conferred upon them by law and as are incidental to the principal authority and neces-

sary to its due execution. (*Leavitt* v. *Palmer*, 3 N. Y., 19;
*Talmage* v. *Pell*, 7 id., 328; *People* v. *Utica Ins. Co.*, 15 J.
R., 358; *N. Y. F. Ins. Co.* v. *Sturges*, 2 Cow., 664; *N. Y.
F. Ins. Co.* v. *Ely*, id., 678; *Bard* v. *Chamberlain*, 3 Sand.
Ch., 31; *Catskill Bk.* v. *Gray*, 14 Barb., 471.) In all actions
by or against a corporation founded on an executory contract
the defence that it is *ultra vires*, in the sense that the corpora-
tion had no authority of law to enter into it, is open to either
party. (3 N. Y., 19; *Abbott* v. *B. and C. Stbt. Co.*, 1 Md.
Ch., 542; *Green* v. *Seymour*, 3 Sand. Ch., 285; *White* v.
*Franklin Bk.*, 22 Pick., 181; *L. and F. Ins. Co.* v. *Mechs.
F. Ins.Co.*, 7 Wend., 31; *N. R. Ins. Co.* v. *Lawrence*, 3 id.,
483; *Bangor Boom Co.* v. *Whiting*, 29 Me., 123; *Root* v.
*Goddard*, 3 McL., 102; *Orr* v. *Lacy*, 2 Doug., 230.) The
alleged guaranty not being within the express or implied
authority of defendant's company was void and cannot be
enforced. (*Root* v. *Goddard*, 3 McL , 102; *M., etc., Assn.* v.
*Meriden Agency*, 24 Conn., 159; *Fisher* v. *N. Y. C. and H.
R. R. R. Co.*, 46 N. Y., 653; *Midland R. Co.* v. *G. W. R.
Co.*, 8 Ch. App., 841; *Pearce* v. *M. and I. R. R. Co.*, 21
How. [U. S.], 441; *Zabriski* v. *Cleve., etc., Co.*, 23 id., 398;
*Coleman* v. *E. C. Co.*, 10 Beav., 1; *Berry* v. *Yates*, 24 Barb.,
199; *M. Svgs. Bk.* v. *M. Ag. Co.*, 24 Conn., 159; *H. and
N. H. R. R. Co.* v. *Croswell*, 5 Hill, 383; *Wiley* v. *First
Nat. Bk.*, 14 U. S. L. Reg., No. 6; *Stevens* v. *R. and B. R.
R. Co.*, 29 Vt., 544; 7 N. Y., 328; *G. E. R. Co.* v. *Tanner*,
8 Ch. App., 152; *B. P., etc., Co. ex parte Grady*, 9 Jur.
[N. S.], 631; *Albert* v. *Svgs. Bk. of Balt.*, 1 Md. Ch., 407;
*Ohio L. Ins. Co.* v. *Mer. Ins. Co.*, 11 Humph., 1.)

*John Murdock* for the respondents. The contract between
the Boston, Hartford and Erie Railroad Company and defend-
ant was not *ultra vires*. (*Sutton's Hospital*, Coke R., part
10; *Brady* v. *Mayor, etc.*, 1 Barb., 590; *Leavitt* v. *N. Am.
Bkg. Co.*, 5 id., 9; *Curtis* v. *Leavitt*, 15 N. Y., 219, 262;
*Olcott* v. *Tioga R. R. Co.*, 27 id., 546; *Feeny* v. *People F.
Ins. Co.*, 2 Robt., 599; *Barry* v. *Mech. Ex. Co.*, 1 Sandf.

Ch., 280; *Ketchum* v. *City of Buffalo,* 14 N. Y., 375; *Town of Middletown* v. *R. R. Co.,* 43 How., 481, 489; Green's Brice's Ultra Vires, 38–40, and note; id., 318–336, and notes; *C. P. and I. R. R. Co.* v. *Ind. and B. R. Co.,* 5 McL., 450; 1 Den., 337; *Burcle* v. *Eckart,* 3 N. Y., 132; Story's Con., 41, 48; Brice on Ultra Vires, 284, 291; Green's Ultra Vires, 327; *W. R. Co.* v. *G. W. R. Co.,* L. R., 8 Ch. App., 841; *Rich* v. *A. R. C. Co.,* L. R., 9 Exch., 224, 263; *Bissell* v. *M. S. and N. J. R. Co.,* 22 N. Y., 259; *Buffett* v. *T. and B. R. Co.,* 40 id., 168; *Parish* v. *Wheeler,* 22 id., 494; *Fisher* v. *N. Y. C., etc., R. R. Co.,* 46 id., 644, 653; *O. and L. C. R. R. Co.* v. *Vt. and C. R. R. Co.,* 6 T. & C., 489; *Zabriskie* v. *C., C. and C. R. R. Co.,* 23 How. [U. S.], 382; *Moss.* v. *R. L. M. Co.,* 5 Hill, 137; *N. Y. F. D. Co.* v. *N. J. O. Co.,* 3 Duer, 648; *Akin* v. *Blanchard,* 32 Barb., 527; *Burtis* v. *B. and S. L. R. Co.,* 24 N. Y., 269; *Burchfield* v. *N. C. R. R. Co.,* 57 Barb., 589; *Carey* v. *C. and T. R. R. Co.,* 29 id., 57; *Root* v. *G. W. R. Co.,* 45 N. Y., 524; *Olcott* v. *Tioga R. R. Co.,* 27 id., 560; Laws 1851, chap. 19, § 28, sub. 6; Laws 1854, chap. 282, § 13; Laws 1855, chap. 302; *Town of M.* v. *R. and O. R. R. Co.,* 43 How., 490.) It was proper for defendant to guaranty the interest maturing on the bonds in question. (15 N. Y., 266, 267; *M. Bk. Assn.* v. *N. Y. L. Co.,* 35 id., 506; 27 id., 560; *Nelson* v. *Eaton,* 26 id., 410; *Parrish* v. *Wheeler,* 22 id., 494; 23 How. [U. S.], 382; G. B., Ultra Vires, 66, 115–123.) The presumption, in the absence of proof to the contrary, is that the bonds were not issued in violation of the terms of the contract. (*Akin* v. *Blanchard,* 32 Barb., 527; G. B., Ultra Vires, 40, 430; *Chautauqua Co. Bk.* v. *Risley,* 19 N. Y., 382.) The makers of the bonds are estopped from setting up a lack of power. (*Bissell* v. *M. S. and N. J. R. R. Co.,* 22 N. Y., 258; id., 494; *St. John* v. *Roberts,* 31 id., 441; *Bk. of Genesee* v. *Patchin Bk.,* 13 id., 315; *Erwin* v. *Downs,* 15 id., 576; *Cogill* v. *Am. Ex. R. R. Co.,* 1 id., 113; *Remsen* v. *Graves,* 41 id., 471; *Oakley* v. *Boorman,* 21 Wend., 588; *McKnight* v. *Wheeler,* 6 Hill, 492; 35 N. Y., 505; 27 id., 560; 25 id.,

496.) The same rules governing other commercial paper are applicable to these bonds. (25 N. Y., 496 ; *Bk. of Rome* v. *Vil. of Rome,* 19 id., 20 ; *Welch* v. *Sage,* 47 id., 143 ; *Evertsen* v. *Nat. Bk. of Newport,* 4 Hun, 692 ; *Brown* v. *Leavitt,* 31 N. Y., 113 ; *Newman* v. *Frost,* 52 id., 422 ; *Youngs* v. *Lee,* 12 id., 554 ; *Day* v. *Saunders,* 37 How. Pr., 534 ; 27 N. Y., 560 ; 29 id., 220 ; 24 id., 269 ; 41 Barb., 25 ; 19 N. Y., 382 ; 35 id., 505 ; *Belmont Branch Bk.* v. *Hoge,* 35 id., 68 ; *Magee* v. *Badger,* 34 id., 249 ; 47 id., 143.)

EARL, J. It is not important to decide whether the Erie Railway Company could legally guaranty the payment of the bonds of the Boston, Hartford and Erie Railroad Company, under the arrangement made at the date of the bonds. Even if the guaranty, when made, was *ultra vires* and, therefore, not binding upon the defendant, there is sufficient reason for enforcing the guaranty upon the bonds in question.

In December, 1867, John T. Eldridge, who was at the time president of the Erie Railway Company, made an arrangement with John Arnot, plaintiff's testator, whereby Arnot delivered to him 3,200 shares of the capital stock of the company, he agreeing upon demand to deliver to Arnot an equal number of shares of the same stock, or at Arnot's option, to pay for the stock $256,000 ; and also agreeing that Arnot should receive on the first days of January and July in the years 1868 and 1869, at the office of the Erie Railway Company in New York, the sum of $11,200, being semi-annual interest on the par value of the stock at the rate of seven per cent. per annum. And to secure the performance of his agreement, Eldridge deposited with Arnot 320 bonds of the Boston, Hartford and Erie Railroad Company of the denomination of $1,000 each, with the right to sell in case of breach of the agreement on the part of Eldridge. At the time of such deposit, there was upon each of the bonds the guaranty of the defendant dated October 8, 1867, as follows : "In consideration of the provisions of a contract of even date, for the use of the Boston, Hartford and Erie Railroad by the

Erie Railroad Company, the Erie Railroad Company hereby agrees with the holder of these bonds that the several interest warrants hereto attached shall be paid as they respectively mature."

While Eldridge made this arrangement with Arnot in form in his individual capacity, there is some ground for saying that he was acting for the defendant and that the bonds pledged as collateral security, belonged to the defendant. But whether he was so acting or not, the defendant subsequently adopted the agreement with Arnot and agreed with Eldridge to purchase the bonds thus pledged and to pay Arnot the sum due him from Eldridge under the agreement above stated. And in December, 1868, the defendant made a contract with Arnot whereby it agreed that Arnot might have and hold as his own the 320 bonds, in consideration that Arnot would release Eldridge and the defendant from all liability on account of the contract made between Eldridge and Arnot under which the bonds were pledged. The arrangement in substance was, that the defendant transferred to Arnot and he accepted the absolute title to the bonds in full discharge of his claim of $256,000, which the defendant had assumed and agreed to pay.

The defendant originally put its guaranty upon all the bonds issued by the Boston, Hartford and Erie Railroad Company for the purpose of giving them value and currency. It subsequently became the owner of all the bonds and it again issued some of them with its guaranty still remaining thereon. The guaranty was additional security for the same debt evidenced by the bonds and passed with the bonds. The purchaser of a bond would take the guaranty as part of his purchase although not mentioned.

It is undisputed that Arnot's claim was a valid one and that the defendant had become legally liable to pay it. It could pay it in cash or could give its own obligation to pay it. Instead of giving its own obligation, it could give the obligation of another which it owned, and guarantee its payment. (*Railroad Co.* v. *Howard*, 7 Wall., 392.)

We must assume that the defendant intended to be liable upon its guaranty when it transferred the bonds, otherwise it would have erased it.   Can we give effect to such intent? It intended to give Arnot these bonds and its guaranty that the interest warrants would be paid.   There was then a sufficient consideration passing from Arnot to the defendant for the transfer of the bonds and for the guaranty, and we may treat the guaranty as if it was then written.   So treating it, it matters not that the true consideration is not expressed. That is always open to explanation and variation by parol evidence. (*McCrea* v. *Purmart*, 16 Wend., 460; *Adams* v. *Heed*, 2 Denio, 306; *Brougham* v. *Weiderwax*, 1 N. Y., 509; *Murray* v. *Smith*, 1 Duer, 412; *Wheeler* v. *Billings*, 38 N. Y., 263; *Barker* v. *Bradley*, 42 id., 316.)   If the guaranty was before void because supported by no valid consideration or made for no authorized purpose, it then became operative.

The transaction may be treated as if the company had said to Arnot: "Here are our bonds and here is our guaranty, take them in satisfaction of your claim."   If that had been said, can it be doubted that the guaranty, resting upon a consideration then passing, would have been valid?   It matters not that the view of the case here taken is one which may not have been taken by the judge at Special Term, and that it rests in part upon facts not specifically found.   It is justified by undisputed facts and the just inferences from them, and is, therefore, permissible in support of the judgment.

The judgment must therefore be affirmed, with costs.

All concur, except ALLEN, J., dissenting; FOLGER and RAPALLO, JJ., absent.

Judgment affirmed.