## JOHN HARDMAN AND OTHERS, RESPONDENTS, *v.* HENRY W. SAGE AND OTHERS, APPELLANTS.

*Action against stockholders of a corporation for a failure to file a certificate of paid · up stock — the liability depends upon the original agreement.*

In an action brought by the plaintiffs as creditors of the Ithaca Organ and Piano Company to enforce the individual liability of the defendants as stockholders thereof, under the general manufacturing act (sec. 10 of chap. 40 of 1848), it appeared that the claim presented by the plaintiffs arose out of a contract entered into between the plaintiffs and the said company for the purchase by the latter of a certain number of pianos, the payment for which was "to be made within ninety days from average date of shipment, either by cash or sixty days' note, with interest." The average date of shipment was August 7, 1883.

Subsequent to such sale the original agreement as to the payment by note was modified, and notes running for a longer term, and from dates subsequent to August 7, 1883, were given.

No action against the corporation, upon this claim, was brought within one year after the time at which the note provided for in the original contract would have become due if such note had been given.

*Held,* that the liability of the stockholders, the defendants in this action, was governed by the original indebtedness and could not be renewed or extended by any renewal or extension thereof, which the creditor might make with the corporation.

APPEAL from a judgment in favor of the plaintiffs entered in New York county upon the report of a referee. The action was brought by the plaintiffs as creditors of the Ithaca Organ and Piano Company, to recover from the defendants, who were stockholders in that company, the amount of a certain note made by one Spargo and indorsed by the piano company, and the amount of four other notes made by the piano company to the order of the plaintiffs. It was claimed by the plaintiffs that the defendants were liable for the reason that no certificate of the payment of the capital stock of said corporation had been made and recorded as required by section 10 of chapter 40 of 1848.

The answer alleged that no suit for the collection of the debts mentioned in the complaint was brought against the company within one year after the debts became due, and that the notes mentioned in the complaint were really renewals or extensions of the original indebtedness incurred prior to the date of the notes in suit.

The referee found that no certificate of the payment of the capital stock or of the increase thereof was ever filed, as required by the eleventh section of said act; that the corporation was dissolved by the judgment of the Supreme Court on the 24th day of January, 1885; that a contract was made between the said corporation and Hardman, Dowling & Peck, a copartnership in the city of New York, by which said co-partnership, agreed to sell to said corporation certain pianos in the months of June, July and August, 1883, for which settlement was to be made in ninety days after the average date of shipment, either in cash or note, at sixty days, bearing interest; that before the expiration of such ninety days from the average date of shipment, said co-partnership agreed to accept from said corporation in lieu of the note provided for in said agreement, its promissory notes, as follows: One for $3,000, dated September 28, 1883; another for $1,530.74, dated October 10, 1883; another for $2,205, dated November 1, 1883, each payable in four months from date, and a fourth note for $1,000, payable March 1, 1884, which notes were made by said corporation and were delivered to said copartnership, and accepted by said copartnership under said contract for the prices of the pianos sold.

*Thos. G. Shearman*, for the appellants.

*Joseph Ullmann*, for the respondents.

BRADY, J. :

This action was brought by the plaintiffs as creditors of the Ithaca Organ and Piano Company, to enforce the individual liability of the defendants as stockholders of that company, under section 10 of the General Manufacturing Act of 1848. The company was dissolved by a judgment duly entered and a receiver appointed on the 24th of January, 1885. Under the proofs in this case there is no doubt of the right of the plaintiffs to recover, provided a suit for the collection of the debts owing to them was brought against the company within a year after they became due, unless the dissolution of the company took place before the expiration of that period. (See *Kincaid* v. *Dwinelle*, 59 N. Y., 548; *Cuykendall* v. *Corning*, 88 id., 129.) The contract between the plaintiffs and the company was for a certain number of pianos to be delivered in June, July and August, with the privilege of ordering fifteen or twenty more. And it was provided by the memorandum as follows: "Settlement to be made within ninety days from average date of shipment, either by cash or sixty days' note, with interest." It is conceded by the respondent's counsel that under this agreement but one settlement within ninety days from one average date was contemplated. And with regard to the date of shipment it is stated by him to be a matter of simple computation, and, correctly speaking, is the seventh of August, meaning the 7th of August, 1883. He also says that at the expiration of ninety days from that date the company had the option to tender either cash or sixty days note but in fact did neither; and before the expiration of the ninety days the company by agreement with the plaintiffs gave four notes in settlement of its account, each running four months, viz: One dated September 28, 1883, one October 10, 1883, and two November 1, 1883, one of which was paid. It is not pretended that the pianos delivered were purchased under any other contract than that mentioned.

The average date of shipment having been ascertained, and accepting August 11, 1883, the date claimed by the appellants, which is to the advantage of the respondent, the ninety days would expire on the 9th of November, 1883, at which time, according to the terms of the contract, as we have seen, there must be either payment or the delivery of a note at sixty days. The contract expressly provides for a note, and not notes, it may be well to

observe in this connection. A note at sixty days, bearing date the 9th of November, 1883, would fall due upon the 11th of January, 1884, and make it incumbent upon the plaintiffs to prosecute the company within a year from that time, a period which would expire about thirteen days prior to the judgment dissolving the company.

The character of the notes actually given does not prejudicially affect the appellant, for the reason that the original contract must prevail in regard to the obligation of the company, and the period when the payment under it became due, which at most extended the credit 150 days from the average date of shipment, namely, from August 11, 1883, to January 11, 1884, including three days' grace for the note to be given. It has been distinctly held that the liability of stockholders is governed by the original indebtedness, and that it cannot be renewed or extended by any renewal or extension which the creditor may make with the corporation. (*Parrott* v. *Colby*, 6 Hun, 55; affirmed, 71 N. Y., 597; reaffirmed in *Jagger Iron Co:* v. *Walker*, 76 id., 521; and reiterated in *Parrott* v. *Sawyer*, 87 id., 622.)

The learned referee states in his opinion that the contract did not fix definitely either the amounts of the payments or the time in which they were to be made, but left both of those elements at the option of the company, simply reserving the right to the creditors to insist upon payment in cash at the end of ninety days from the average date of shipment, or notes at sixty days bearing interest; and proceeds to declare that although the agreement was never literally complied with and modified by mutual agreement, the right of the parties to make the modification cannot be disputed, and suggests that it does not seem to affect the liability of the stockholders of the company, if such liability ever existed. No authority for this view was cited by him, and none has been supplied by the learned counsel for the respondent. It is true that the contracting parties might between themselves make any modification of the agreement in which they chose to unite. But any arrangement of that kind must be subservient to the rights of the stockholders whose liability is regulated by statute, and cannot be extended by any compact between the parties.

The learned counsel for the respondents is mistaken in supposing that the case of *Veeder* v. *Mudgett* (95 N. Y., 295) supports his

contention on any question involved on this appeal, for the reason that the action was brought, according to the statement of the reporter, within a year after the original debt matured, but the court placed its decision entirely upon the ground that none of the defendants were liable for the old stock held by them, inasmuch as it was full paid stock and discharged by law. The claim resting upon the Spargo note is subject to the same rule applied to the other demands. The learned referee says, in regard to it, that if the liability of the company on the note is but the renewal or continuance of the original debt, which became due on October 11, 1883, then the defendants are not liable. He thought, however, as the note was one of a third party, indorsed by the company and accepted by the plaintiffs in payment of part of the old indebtedness, a new contract of suretyship was made, upon which alone the company was liable. The dealings of the parties *inter sese* may be sustained in all respects; but if the liability of the stockholder is to be preserved they must be in subjection to the rigor of that liability, which is regulated by statute, and, as we have seen, cannot be extended beyond the legislative will. There is no combination of legal rule or circumstance which can change it without the acquiescence of the stockholder, and when the attempt is made it is because the distinction between the law of debtor and creditor, and creditor and stockholder is lost to sight. It is impossible to maintain the proposition, however changed the form of indebtedness by the parties contracting, that the claim is not a part of the original demand which was due on the 11th of October, 1883. The right of companies to make and indorse notes in order to pay their debts may not be doubted. (*Arnot* v. *Erie Railway Co.*, 67 N. Y., 315; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y., 159.) If the claim be a valid one against the company, as said by EARL, J., in *Arnot* v. *Erie* (*supra*), instead of giving its own obligation it could give the obligation of another which it owned and guarantee its payment. This process would be only a recognition of an existing liability, and would rest on that as a basis. The original debt, in whole or in part, would still be there and the guarantee would only be a prolongation of the time for payment, if a note owned by the company were given and guaranteed. The burden imposed upon the stockholder relates to the original obligation, and if it can be changed

by the action of the contracting parties, so as to continue it for a day beyond the year expressed in the statute, it may be for an unlimited period, which was never contemplated when the law was passed, and has not been sanctioned by construction or interpretation. These views are all sustained by the principles enunciated in *Parrott* v. *Colby* (*supra*) and affirmed, as we have seen.

For these reasons the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

Daniels and Bartlett, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide event.