TAX ASSESSMENT—DEDUCTION OF INDEBTEDNESS—INDIRECT LIABILITY.

Tax Law, § 6, provides that "no reduction shall be allowed in the assessment of personal property * * * on account of any indirect liability as surety, guarantor, indorser, or otherwise." The relator leased the property of a railroad company for the entire term of its charter, and for every renewal thereof. Pursuant to an agreement in the lease, bonds of the railroad company amounting to $10,000,000 were issued, and were indorsed with the relator's guaranty. The tax commissioners refused to deduct the amount of the bonds from the relator's assessment, on the ground that they constituted an indirect liability as guarantor. *Held*, that the amount of the bonds should be deducted from the relator's assessment, since the engagement, though collateral in form, was in substance an original undertaking.

Certiorari by the people, on the relation of the Delaware & Hudson Canal Company, against Thomas L. Feitner, to review an assessment of taxes. Assessment canceled.

David Willcox, for relator.

John Whalen (James M. Ward, of counsel), for respondents.

LEVENTRITT, J. The preliminary question involved on this application as to the admissibility of the second stipulation I have decided adversely to the defendants. Tax Law 1896, c. 908, § 253; People v. Dederick, 161 N. Y. 195, 55 N. E. 927; People v. Barker, 152 N. Y. 417, 46 N. E. 875; People v. Feitner, 43 App. Div. 198, 59 N. Y. Supp. 327. Even in the absence of these authorities, the relevancy of the second stipulation flows from the unqualified admission of the first, inasmuch as it concededly correctly states the disposition of the bonds referred to in the latter. The fact existing, it would be inequitable not to consider its effect on the issues.

On the entire record, it seems quite clear that whether the interest of the relator in the disputed items of property be considered that of absolute ownership in fee, or merely that of lessee, the commissioners erred in refusing to deduct the indebtedness assumed by the relator for the 10,000,000 of Susquehanna & Albany railroad bonds. I deem it unnecessary to consider other points in the case, as the allowance of this deduction necessarily cancels the assessment against the relator. The pertinent facts concerning this item may be very briefly stated. In the year 1870 the relator leased the property of the Albany & Susquehanna Railroad Company for the full term of its charter, and for every renewal and continuance thereof. It is quite evident from the instrument, as is in fact stated in another lease to the relator, and involved in the proceedings before the commissioners, that it was the intention of the parties to make the transfer as nearly perpetual as was possible and practicable under the law. There are at present outstanding bonds of the Albany & Susquehanna Railroad Company in the amount of $10,000,000, which are secured by the consolidated mortgage of that company, and which were issued pursuant to an agreement made in connection with the lease, and to facilitate and effectuate the transfer. Of these bonds $377,000 were ex-

changed directly with the individual holders of bonds previously outstanding. The balance, $9,623,000, were issued to the relator,— $3,073,000 in exchange for bonds which it had purchased, and $6,550,000 in payment for sums expended by it in construction work upon the property. The relator subsequently sold these bonds to the holders, and received the amount thereof. Pursuant to one of the terms of the lease, there was indorsed upon each bond, under the relator's seal, the following guaranty:

"The President, Managers, and Company of the Delaware and Hudson Canal Company hereby, for value received, guaranty the payment of the principal of, and the interest of, the within bond."

The interest on these bonds is and has been paid by the relator directly to the holders.

The commissioners justify their refusal to deduct the $10,000,000 of outstanding bonds by section 6 of the tax law, which reads:

"No deduction shall be allowed in the assessment of personal property by reason of the indebtedness of the owner contracted or incurred in the purchase of nontaxable property or securities owned by him or held for his benefit, nor for or on account of any indirect liability as surety, guarantor, indorser, or otherwise, nor for or on account of any debt or liability contracted or incurred for the purpose of evading taxation."

The commissioners maintain that the item sought to be deducted represents an indirect liability as guarantor, and is therefore nondeductible. It is argued that the statute refers to and excludes from deduction all indirect liabilities; that the statute specifically defines what is meant by the phrase "indirect liability," and distinctly qualifies the term by enacting that it shall be held to include liability such as surety, guarantor, and indorser, and irrespective of the fact whether or not the liability as guarantor is considered indirect in law. The contention reduces itself to this: That the mere use of the word 'guaranty" to define an obligation assumed makes the liability nondeductible under the tax law, regardless of the question whether, in fact or law, the obligation is direct or indirect, primary or secondary. The manifest fallacy of this construction is correctly pointed out by the relator, who shows that this would lead to the result that any liability expressed "otherwise" is an indirect liability and cannot be deducted. After insisting that force and effect must be given to every word of the statute, and that therefore the proper construction includes an indirect liability as surety, guarantor, or indorser, and in addition includes such other liabilities as are indirect, the defendants, in effect, discard the word "indirect," because, if the statute includes all liabilities as guarantor, it is superfluous to characterize them as indirect. The proper reading of the statute is that it is intended to exclude indirect liabilities. The words following "liability" are explanatory. So far as the liability of a guarantor can be direct, it is excluded. When the reason underlying the nonexemption of indirect liabilities is considered, the exclusion of the direct is readily justified. That reason is the prevention of double deduction. People v. Barker, 155 N. Y. 330, 49 N. E. 940. The person directly responsible for the debt alone can deduct it; and properly, because the debt is an asset in the hands of the creditor, and there taxable. Thus

the principle that no property shall escape taxation unless expressly exempted is carried out. But, if the person indirectly and secondarily responsible is also allowed to deduct the debt, there is no corresponding asset to be taxed in some other's possession. The inquiry here must therefore be, is the relator directly or indirectly liable? It is clear that the relator is primarily, directly, and originally liable; that the consideration moved directly to it; that the obligation assumed was for its own benefit; and that under all the circumstances of the issue, "guaranty" of payment, and disposition of the bonds, it, in the first instance, became answerable for their payment, while the lessor was shifted to the position of surety. The fact that the form of indorsement employed the word "guaranty" must not be permitted to confuse the legal effect, not only of that word, but of the whole obligation assumed by the indorsement. Though the word is often employed in business dealings to express relation to a debt clearly understood by the parties interested, it must be remembered that from the legal standpoint the terminology may be loose, and that the word may neither have the meaning nor be attended by the consequences which would flow from accurate usage with reference to the circumstances of the transaction. In its restricted legal sense, a guaranty stands for an indirect liability. 14 Am. & Eng. Enc. Law (2d Ed.) 1128, and cases cited. Some one else is liable in the first instance. Here, under a direct contract with each bondholder,—under a promise founded on a distinct and new consideration, beneficial to the promisor,—the obligation assumed was not collateral. but primary. It is to be borne in mind that to effectuate the lease, advantageous to the relator, an entirely new issue of bonds, secured by the trust mortgage, was provided for. By virtue of that transaction the lessor, which had previously been the principal debtor, became merely collaterally liable as surety for the payment of the debt. Woodruff v. Railroad Co., 93 N. Y. 609. It is but necessary to refer to two of many cases to fortify the position here adopted: Arnot v. Railroad Co., 67 N. Y. 315. The defendant, in consideration of the construction by another railroad company of a connecting line, indorsed an alleged guaranty of the payment of the interest coupons on the bonds of that company. Subsequently the defendant, having become the owner of all the bonds, issued some to the plaintiff's testator. The defense to a suit on the bonds was that the obligation was collateral. The obligation was held to be the direct primary obligation of the defendant. "The transaction," the court say, "may be treated as if the company had said to Arnot: 'Here are our bonds, and here is our guaranty. Take them in satisfaction of your claim.'" Newcomb v. Hale, 90 N. Y. 326, was an action brought to foreclose a mortgage executed by one defendant, and which, with the accompanying bond, had been assigned to the plaintiff by another defendant, who in the assignment guarantied the payment of the bond. "The guaranty of the defendant," says Andrews, C. J., "was not entered into for the benefit of the. original debtor, but for his own benefit, subsequent to the original transaction, and upon a new and independent consideration moving from the plaintiff. The engagement was collateral in form, but it was in substance an original undertaking; and

an immediate right of action accrued thereon to the plaintiff, on the mortgage debt becoming due. It was, by the contract, the duty of the defendant to pay the mortgage when the debt matured." To the same effect are Railroad Co. v. Howard, 7 Wall. 392; Cardell v. McNiel, 21 N. Y. 336; Warren v. Wilder, 114 N. Y. 209, 21 N. E. 159. The obligation, then, which the relator assumed with reference to these bonds being direct, it was and is a debt deductible under the statute (section 12), and not an indirect liability nondeductible under section 6.

In the view I have taken, the nature and extent of the relator's interest in the property of the Albany & Susquehanna Railroad Company is quite immaterial. The assessment here reviewed is an assessment of the relator's personal property. If the interest is real estate, then the assessed value of that real estate is to be deducted from its gross value, in order to arrive at the actual value of capital stock and surplus as provided for in the tax laws (People v. Coleman, 126 N. Y. 433, 27 N. E. 818); if personalty, the actual value of the leasehold interest must be added to the rest of the relator's personal property. In either event, debts are to be deducted.

As the amount of the deduction by reason of the indebtedness in the bonds exceeds the amount declared taxable by the commissioners, it follows that the assessment must be canceled. Ordered accordingly.