Johnson, J.
The application was based upon the provisions of Section 614-53, General Code, *58 viz.: “A public utility or a railroad, * * * may, when authorized by order of the commission, and not otherwise, issue stocks, bonds, notes and other evidences of indebtedness, payable at periods of more than twelve months after date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities * * * or for the reimbursement of moneys actually expended * * * for any of the aforesaid purposes.”
It is said that the commission was not certain whether the guaranty referred to in the application is an evidence of indebtedness, and that this doubt caused the inclusion in the order of the words “in so far as this commission may grant said authority.” A bond is an evidence of indebtedness, and the written guarantee which the New York Central requests authority to make on the bond, to be signed by it, would, if valid, thereby become an evidence of the indebtedness of the applicant on the bond. But the company could not incur any indebtedness, and the commission could not authorize the issuance of any evidence of indebtedness, except of such as the company was legally empowered to create against itself. Such consent would not be necessary as to an evidence of indebtedness for any purpose not named in the above section. For example, by the negotiation and transfer by endorsement of commercial paper taken in the course of its ordinary business operations and not included in the purposes specified in the section above named. The commission is an adminis *59 trative board with supervisory powers which do not extend beyond those granted by statute. It cannot confer corporate power or enable the doing of things beyond the scope of that power.
Section 8683, General Code, enacts: “A private corporation may also purchase, or otherwise acquire, and hold shares of stock in other kindred but not competing private corporations, domestic or foreign. This shall not authorize the formation of a trust or combination for the purpose of restricting trade or competition.” Section 8684 provides that no corporation shall employ its stocks, means, assets, or other property, directly or indirectly, for any other purpose than to accomplish the legitimate objects of its creation.
It was held in Mannington v. Hocking Valley Rd. Co., 183 Fed. Rep., 133, that the provisions of Section 8683, General Code, apply to railroad companies. The limitations and safeguards provided in the sections above referred to are clear and explicit. The company had no authority whatever to purchase the stock in the absence of express statutory provisions, and then only under the circumstances and within the limitations set out in the statute. The applicant company was within its powers in the acquisition and holding of the stock of the T. H. & B. company, provided it did not in doing so violate any of the limitations expressed in Sections 8683 and 8684, General Code.
As shown in the statement, the applicant is a consolidated company organized and existing under the laws of the six states named, but we think it *60 clear that the power, rights and duties of the company within the state of Ohio must be determined by the laws of this state.
Section 9Ó29, General Code, concerning consolidated companies, provides: “When the agreement is made and perfected, as provided in the next preceding section, and it or a copy thereof filed with the secretary of state, the several companies parties thereto shall be deemed and taken to be one company, possessing within this state all the rights, privileges, and franchises, and subject to all the restrictions, disabilities, and duties, of a railroad company.”
In Ashley et al. v. Ryan, 49 Ohio St., 504, the court had under consideration the status of a consolidated company. It was there held that the provisions of our statute (Section 176, General Code), requiring the payment of a fee for filing articles of agreement of incorporation, and also of consolidation, apply to articles of agreement of consolidation between an Ohio company and a company or companies of another state. It is said in the opinion, at page 529: “Many diffi-' culties have been suggested, as arising, if a Company, formed by the consolidation of an Ohio compány with a company of another state, should be held to be a new corporation. * * * But it seems pretty well settled, upon principle at least, that where formed under co-operative legislation of the different states, it becomes a corporation in each state where its road is located. It is a legal entity residing and doing business in different states, with a status in each, derived from and de *61 termined by the laws of that state. * * * The stockholders of the company in the other states, must be presumed to know what the Ohio law is in this regard.”
In Peik v. Chicago & Northwestern Ry. Co., 94 U. S., 164, it is said, at page 177: “In this way, Wisconsin in effect said to the Illinois companies, ‘You may consolidate your interest with those of the named companies in this State, and form one corporation in the two States; but, in so doing, you must, in Wisconsin, be subject to our laws.’ ”
In Attorney General v. N. Y., N. H. & H. Rd. Co., 198 Mass., 412, the railroad company was created by charters from Massachusetts and Connecticut, operating a railroad in both states, having the same capital stock to cover its property in both states. It is there said (page 422): “Powers and franchises of a general character, whose effect upon the corporation would not be merely local, but would work changes in its relations to private persons and to the public authority in both States-alike, stand differently. It is not easy to maintain that under these statutes there is implied authority to the corporation to receive such powers from either State alone and hold them in such a way that they will have full effect in both States. If any such general powers can be so granted and held without legislative action in both States, it seems plain that they are only such as are not in conflict with the laws or the declared public policy of the State which does not grant them. Massachusetts cannot grant this corporation franchises to be enjoyed and exercised in Connecticut, which.are con *62 trary to the laws of Connecticut; for the corporation in each State is a domestic corporation, and as such it is governed by the laws of the State of its creation in all that it does within that State.”
The fact that the consolidated company is a new corporation does not deprive the various states of their jurisdiction over it nor render it less subject to their laws. Like every other corporation it has its domicile. It is not a corporation at large. Its privileges in each state are those conferred by the laws of that state and its obligations in each state are those created by the laws of that state.
The position of the applicant company is that having legally acquired stock in the T. H. & B. company, and having in pursuance of the right of a legally constituted stockholder of that company joined in the purchase of its bonds for the protection of its interests, and the interests of its stockholders, it is, as a necessary incident, authorized in order to “reimburse itself for the money so ■expended” to sell and guarantee the bonds purchased.
By the provisions of Section 9039, General Code, a consolidated railroad company may take, hold, pledge or otherwise dispose of, under such terms as the directors prescribe, the stock and bonds of any other company acquired upon consolidation or received by virtue of any purchase or lease or operating contract. The manifest purpose of this section is to enable the consolidated company to do every proper thing with reference to the “stock and bonds” of any of its .constituent companies, *63 which the constituent companies themselves could have done. In such a case the consolidated company holds all of the assets of the constituent company that has been merged with it. Having permitted the consolidation, the provisions of this statute were simply in pursuance of wise, business and public policy.
In this case a different question is presented. There has been no consolidation with the T. H. & B. company. Its identity and separate entity are still maintained, and the other companies referred to, as well as the New York Central, hold stock in it.
It is not claimed by the applicant that it has the power to guarantee these bonds by express statutory provision, but that the power to guarantee them is fairly incident to its right to sell them after it has legally acquired them.
In the case In re New York Car Wheel Works, 141 Fed. Rep., 430, it was held that “An indorsement by a corporation of notes of another corporation is hot an accommodation in a legal sense and void as ultra vires, but is a guaranty, based on a valuable consideration, and valid, where the indorsing corporation at the time owned all the stock of the other,” and in Railroad Co. v. Howard, 7 Wall., 392, the United States supreme court held that a railroad company owning bonds of cities and counties given to it in aid of the construction of its road could properly sell them and guarantee their payment. In Broadway Natl. Bank v. Baker, 176 Mass., 294, it is held that guaranties of payment *64 of bonds taken by a loan and trust company in the ordinary course of its business, made in connection with their sale, are not ultra vires, and are binding.
In Jones on Corporate Bonds and Mortgages (3 ed.), Section 283, it is said: “It is within the corporate powers of a railroad to guarantee bonds taken and held by it in the usual course of its business.” And in 1 Elliott on Railroads (2 ed.), Section 481: “Thus, where it [the railroad company] has power to issue bonds of its own it also has implied power to guaranty the bonds of another railroad company, properly taken in payment of a debt, in order to enable it to sell them for an adequate price or to use them in payment of its own debt. And it may be safely said, we think, as a general rule, that such a guaranty may be valid, without an express grant of authority to make it, if it is supported by a valuable consideration of a kind that the guarantor company has authority to receive and invest in.”
In Arnot et al. v. Erie Ry. Co., 67 N. Y., 315, the Erie railway had agreed to guarantee the payment of interest on certain bonds of another railroad company, in consideration of the latter constructing a railroad connecting the railroads of the two companies and agreeing to conduct the business between the roads on joint account The other railroad company issued its bonds on which The Erie Railway Company endorsed its guaranty. The Erie company later came into possession of .these bonds, a part of which were transferred to Arnot. It was held that the guaranty was additional security .for the same debt evidenced by the *65 bonds, and passed with them to a purchaser. The court say: “It is undisputed that Arnot’s claim was a valid one and that the defendant had become legally liable to pay it. It could pay it in cash or could give its own obligation to pay it. Instead of giving its own obligation, it could give the' obligation of another which it owned, and guarantee its payment.” In 7 Rul. Case Law, 604, it is said: “A railway company which has received municipal aid bonds may transfer them to raise money, and, if it is deemed expedient, guarantee their payment as a means of augmenting their credit in the market.” In Marbury v. Kentucky Union Land Co., 62 Fed. Rep., 335, it was held that a land company which had the right to effect consolidation with a railroad company necessarily had the power to acquire the stock of such railroad company and guarantee its bonds, thus accomplishing all that a complete consolidation could accomplish with less risk and responsibility. In the opinion it is said at page 344: “If now, as already said, this permits the land company to part with complete control over its own business, and to risk all its property in the business of railroading, it is difficult to •see why there should not be included in such a power, as part of, or less than, the whole, the right to acquire the stock in a railroad company, and. to guaranty its bonds. * * , * It seems to us that-the purchase of the stock and guaranties can be supported on the ground that, even if they did not constitute a consolidation, they were legitimate steps towards a consolidation. They involved the *66 exercise of a power similar to, but less extensive than, that of consolidation, and may fairly be said to have been included in it, as the part is included in the whole.”
A number of cases are cited by the plaintiffs in error in support of the proposition that the guaranty by one corporation of the debts of another embarks its capital in an enterprise not contemplated by its charter and tends to divert its property from the legitimate uses of the company; that such a diversion of its funds is ultra vires and any stockholder may object to the transaction.
In 33 Cyc., 455, it is said: “As a general rule a railroad company * * * has no power to enter into any contract or indorsement by which it becomes a guarantor or surety, or otherwise lends its credit to another person or company, even though it may derive some benefit from the guaranty, except in so far as it is expressly authorized to do so by its charter or other statute, and except where the power to do so is implied from the company’s general powers, as being necessary and proper to enable it to accomplish the objects for which it was created, and in the conduct of its business.” See also 7 Rul. Case Law, 603.
In Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Co., 174 U. S., 552, it is held:
“Under a statute authorizing the board of directors of a railroad corporation, upon the petition of a majority of its stockholders, to direct the execution by the corporation of a guaranty of negotiable bonds of another corporation, a negotiable guaranty executed by order of the directors, and signed *67 by the president and secretary and under the seal of the first corporation, upon each of such bonds, without the authority or assent of the majority of its stockholders, is void as to a purchaser of such bonds with notice of the want of such authority or assent; but is valid as to a purchaser in good faith and without such notice.” In the opinion it is said by Mr. Justice Gray, at page 567: “A railroad corporation, unless authorized by its act of incorporation or by other statutes to do so, has no power to guarantee the bonds of another corporation; and such a guaranty, or any contract to give one, if not authorized by statute,. is beyond the scope of the powers of the corporation, and strictly ultra vires, unlawful and void, and incapable of being made good by ratification or estoppel.”
We think that in view of the express statutory provision of Ohio which confers upon corporations the authority to “purchase, or otherwise acquire, and hold shares of stock in other kindred but not competing private corporations, domestic or foreign,” pursuant to which the applicant acquired stock in the T. H. & B. company, applicant was authorized, as incident to the larger power, to purchase bonds of the T. H. & B. company, if in its judgment, acting in good faith, such a transaction would safeguard and further its interests as a stockholder; and, having legally acquired the bonds, it may, upon reason and authority, dispose of them in the ordinary manner dictated by business prudence and practice. It must be remembered that at all times the good faith and the character of the transaction, as to being fraudulent or otherwise *68 illegal, may be inquired into in a proceeding in a court of competent jurisdiction.
In the conduct of the negotiation, it would seem to be clear, that, if it would promote a more advantageous transaction to the holding company to guarantee to a purchaser the bonds so held by it, it might legally do so.
In 1 Clark & Marshall on Private Corporations, 490, it is said: “A corporation may guaranty the payment of bonds, notes and other evidences of debt owned by it, in order to negotiate or sell the same.” See cases cited.
There is no statute in .Ohio prohibiting it and we think it is in keeping with the public policy indicated by statutory enactments upon kindred features. The Central Ohio Natural Gas & Fuel Co. v. The Capital City Dairy Co., 60 Ohio St., 96.
Therfe is, however, a more serious feature of this case. The guaranty proposed, and permitted by the order of the commission, is joint and several on the part of the applicant, the Canadian Pacific and the Michigan Central, which also assumes the obligations of the Canada Southern, not only of the $500,000 face value of the bonds owned by the applicant, but of the entire $2,000,000 owned by all the companies. That is to say, it is proposed that the applicant shall, not only guarantee the bonds owned by it, which it has acquired in the manner above described, and which we think it may legally do, but that it shall go further and guarantee $1,500,000 of bonds owned by the other companies. The applicant Ohio company could not aid or assist the other companies in the purchase of- *69 the stock. Such rights are regulated by Section 8806 et seq., General Code, and it is not claimed that the requirements of these sections have been complied with.
It is true that in the contract between the parties, which is included in the act of the Canadian parliament, shown in the statement, the liability of each of the companies on the contractors’ guarantee, as between themselves, is fixed. It provides that this liability shall be, as to each, in proportion to the ' amount of bonds purchased by it. But nevertheless as to the purchaser or purchasers of the bonds, the New York Central would be liable on the guaranty for a very much larger portion of the bonds than it owned.
It is said by counsel for the defendant in error: “There is nothing wrong, unusual or dangerous about this. * * * The commission' was the judge of the possible risk which the applicant would run by executing the guaranty. Under any normal conditions the chances that the Central will have to pay any part of the obligations which the Canadian Pacific and Michigan Central have assumed, amounting to $1,500,000, are nil. When two such properties become unable to pay, all other railroad securities will probably be worthless, so that there is nothing but a theoretical point made by the suggestion that the Central is lending its credit to those roads.” These are suggestions to be taken into consideration by any person or corporation duly authorized, which is solicited to bind itself or himself for the debt of another. But it cannot be that the commission is authorized to enter upon spec *70 ulative fields such as suggested. Corporate authority—legal capacity to act—does not depend upon and vary with the probabilities of particular transactions. It is not a question of safety — it is a question of power.
The authorities cited by the defendant in error only justify the guaranty by a corporation of debts (which are not originally incurred by it) under the conditions and within the limitations we have above pointed out.
In 3 Cook on Corporations (7 ed.), Section 775, it is said: “One of the most important and yet difficult branches of railroad and corporation law is the question whether one railroad corporation may guarantee the bonds or dividends of another railroad corporation. The power of a railroad corporation in this respect is much more restricted than that of a trading or manufacturing corporation, because the former is a quasi-public corporation and its powers are strictly construed. Moreover, the location of its railroad is specified in the charter, and the guaranty of the bonds or dividends on the stock of another railroad corporation is much the same as buying the stock of the latter, which is not legal, unless expressly authorized by the charter or the statutes of the state. A railroad corporation has no implied power to guarantee the bonds or dividends on the stock of another railroad corporation.” In the same section it is said: “The power of a railroad company to consolidate with or purchase the railroad of another company does not give power to guarantee the bonds of the latter company without such a consolidation or purchase.”
*71 It was held in Northside Ry. Co. v. Worthington, 88 Tex., 562, that two corporations, though each may incidentally be benefited, have no implied power to borrow a sum of money to be divided between them, and each become surety for the other to the amount received by such other. And see 10 Cyc., 1179, and cases cited.
The contract, included in the act of the Canadian parliament by which the proposed transaction is sanctioned, prescribed the exact terms of the joint and several guaranty to be signed by each.
It is not doubted that the parties viewed the whole arrangement as one which would be best accomplished by the joint action of the companies interested, and it is very probable that in this instance that may be true. But that would not justify one of the contracting parties in going beyond its legal capacity in any essential and material element of the transaction.
Attention is called by counsel for defendant in error to the statute of Pennsylvania, effective April 23, 1903, which authorizes a railroad company existing under the laws of that state to own, sell and guarantee the bonds “of any corporation of this commonwealth or elsewhere engaged in the business of transportation.” As we have seen,' this statute could not be effective to authorize such an act on the part of a company which was controlled by the Ohio statutes touching anything done by it in this state. But we remark that it is significant that it was regarded as necessary or advisable by the legislature of Pennsylvania to expressly grant this authority. Does it not carry the implication *72 that in Pennsylvania, under the general rule and in the absence of express statutory authority, the company would have no such power? The same inquiry may be made touching the suggestions concerning the'statutory provisions that are cited with reference to the state of New York.
The contract provides for the acquisition of the entire $10,000,000 of bonds of the Toronto; Hamilton & Buffalo company whenever issued, on such terms “as may be mutually agreed,” and for the disposition of them by joint and several guaranty of the companies, as shown. A railroad company is a gM£m-public corporation with rights and privileges different from and in excess of those of others, and subject to obligations directly to the public.
There is general agreement as to the chief grounds upon which rests the principle that corporations are not permitted to contract beyond the legal limits of their powers—the interest of the public that the corporation shall not transcend the authority conferred on it by law, and the interest of the stockholders that the company and its property shall not be subjected to risks not provided for in its charter and not contemplated or undertaken by them when they subscribed for the company’s stock.
Each of the companies that desire to accomplish the proposed arrangement is presumed to know the contractual powers of each of the others.
We think that the applicant has the right, implied from and incidental to the exercise of powers conferred by express statutory provisión in Ohio, to *73 sell bonds which it may acquire from the Hamilton company under the circumstances set out, and to guarantee such bonds as part of the transaction, in order to sell to the best advantage. But we think it has no authority to go beyond that, and guarantee bonds which it does not own.
A different rule would permit the entering upon enterprises with resultant obligations not at all contemplated by any legal provision. Carried to its logical result, the company by such undertakings could, for considerations wholly insufficient or wholly speculative, risk its assets to the detriment of its creditors and shareholders. The state hqs made provision for the creation of railroad corporations, and, in recognition of their great service in the development of the resources of the country and the promotion of its progress, has from time to time extended and enlarged-their powers, subject to such regulations as were deemed to be wise. Additional extensions and regulations will doubtless be made by the state as experience shall dictate.
It having created an administrative agency with supervisory powers, the public and the stockholders have a right to expect that approval, will be given only to such acts as do not exceed powers expressiy granted or fairly implied.
If the proposed plan can be modified so that each company shall hold its portion of the bonds in severalty and guarantee that portion, it would, in view of the undoubted financial strength of each, present a situation in which a proper order could be made.
*74 The order will be modified so as to permit the accomplishment of such a plan, if desired.

Order modified.

Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Donahue, JJ., concur.